IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 24-cv-00464-LTB

M.M-M.,

        Plaintiff,

v.

FRANK J. BISIGNANO, Commissioner of the Social Security Administration[1],

        Defendant.

## ORDER

Plaintiff, M.M-M., appeals from the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for disability insurance benefits ("DIB"), filed pursuant to Title II of the Social Security Act, 42 U.S.C. § 401, *et. seq.,* and her application for supplemental security income ("SSI"), filed pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et. seq.* Jurisdiction is proper under 42 U.S.C. § 405(g) and § 1383(c)(3). Oral argument would not materially assist me in the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, I REVERSE and REMAND the SSA Commissioner's final decision as follows.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. STATEMENT OF THE CASE

Plaintiff filed DIB and SSI applications in January of 2021, alleging disability as of August 1, 2018. ECF No. 10-5 at 281-89.² Following an evidentiary hearing on June 14, 2023, ECF No. 10-2 at 46-112, an Administrative Law Judge ("ALJ") denied Plaintiff's applications on August 30, 2023. *Id.* at 25-40. Then, after the Appeals Council denied review, *id.* at 1-6, this order became the SSA Commissioner's final decision. Plaintiff subsequently filed her complaint with this court seeking judicial review of the Commissioner's final decision denying her DIB and SSI applications. ECF No. 1.

## II. ALJ's DECISION

In the final decision, the ALJ applied the five-step sequential process outlined in 20 C.F.R. § 404.1520(a) and § 416.920(a). ECF No. 10-2 at 28-40. In so doing, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a limited range of light work, as defined in 20 C.F.R. § 404.1567(d) and § 416.967(b). ECF No. 10-2 at 31. At step four, based on the assessed RFC, the ALJ found Plaintiff was unable to perform her past relevant work, *id.* at 38, but considering her age, education, and work experience, as well as her assessed RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 39-40. As a result, the ALJ concluded at step five that Plaintiff was not disabled, as defined by

---

2 When citing to the Administrative Record, this Court utilizes the docket number assigned by the Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other pleadings, this Court cites to the document and page number generated by the CM/ECF system.

the Social Security Act. *Id.* at 40.

## III. STANDARD OF REVIEW

When deciding Social Security appeals, this Court reviews the ALJ's decision to determine whether the factual findings were supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Levan v. Berryhill*, No. 18-CV-02340-NRN, 2019 WL 2336852 (D. Colo. June 3, 2019) (unpublished) (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007)); *see also Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097 at *2 (10th Cir. Aug. 2, 2022) (unpublished) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). And "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Additionally, "[t]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra*, 2022 WL 3041097, at *2 (quoting *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Therefore, "if the ALJ failed to apply

the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

In summary, reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra*, 489 F.3d at 1084.

## IV. ANALYSIS

Plaintiff raises three claims of error on appeal. Specifically, she contends that the ALJ erred when assessing her RFC by: 1) failing to properly assess the opinion evidence provided by Ann Wilkins, R.N.; 2) failing to included limitations to accommodate Plaintiff's migraines; and 3) failing to provide sufficient analysis to support the ALJ's rejection of Plaintiff's subjective complaints. Plaintiff argues that the ALJ's RFC errors require remand for further proceedings.

The ALJ found that Plaintiff was capable of performing light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except that she can:

> never climb ladders, ropes or scaffolds; occasionally balance per the Selected Characteristics of Occupations; occasionally perform other postural activities; frequently handle, finger and feel with the bilateral upper extremities; can have no exposure to excessive vibration, moving mechanical parts or unprotected heights; can have occasional contact with coworkers, supervisors or the public; and must work indoors. ECF No. 10-2 at 31.

An assessed RFC is a multidimensional description of the work-related abilities a claimant retains despite his or her impairments. 20 C.F.R. § 404.1545(a)(1), § 416.945(a)(1). It "does not represent the least an individual can do despite his or her limitations or restrictions, but the most." Social Security Ruling ("SSR") 96-8p.

### A. Opinion of Anna Wilkins, R.N.

Plaintiff first argues that the ALJ erred when weighing the opinion of Anna Wilkins, R.N. The ALJ found as follows:

> Anna Wilkins, a registered nurse who has treated [Plaintiff], stated in a report of June 6, 2023 that [Plaintiff] could walk 1 block at a time, sit for 15 minutes at a time, stand for 15 minutes at a time, sit for less than 2 hours a day, stand/walk less than 2 hours a day, required the opportunity to shift positions at will, must walk every 15 minutes for 10 minutes at a time, would need hourly unscheduled breaks of 10 minutes due to muscle weakness, fatigue, pain and anxiety, would need to elevate the legs 50% of the workday due to pain and swelling, could occasionally lift 20 pounds and occasionally perform postural activities. Ms. Wilkins found severe limitations in the use of the upper extremities. She stated that [Plaintiff] could use [her] hands for grasping, turning and twisting 50% of the day, use the fingers for fine manipulation 60% of the day, reach overhead 20% of the day and reach in front of the body 50% of the day. She found that [Plaintiff] would be off task 25% of the workday, was incapable of even low stress work and would be absent from work more than four days a month. ECF No. 10-2 at 36-37 (citing ECF No. 10-7 at 1985-89).

When ruling that Ms. Wilkins' opinion, provided in a Physical Medical Opinion form, was "unpersuasive," ECF No. 10-2 at 37, the ALJ found that the limitations assessed were "not supported" in that:

> [t]here is no medical impairment that would significantly limit [Plaintiff's] ability to sit, stand or walk. There are no impairments that would support the need for shifting positions, frequent breaks to stand and walk or unscheduled breaks. [Plaintiff's] limitations in the use of the hands due to carpal tunnel and cervical degenerative disk disease are dramatically overstated in view of the good control of her cervical symptoms with injections and her good response to carpal tunnel surgery. There is no evidence to support the contention that anxiety or physical impairments would cause [Plaintiff] to be off task 25% of the workday or that she would be absent from work four days a month. *Id.* at 37.

For claims filed on or after March 27, 2017, as here, the regulations set forth in 20 C.F.R. § 404.1520c and § 416.920c require that the ALJ assess the

persuasiveness of each medical source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c), § 416.920c(c).

The two most important factors in evaluating persuasiveness are supportability and consistency. *See T.D.F. v. Kijakazi*, No. 22-CV-02145-MDB, 2023 WL 6249035, at *4 (D. Colo. Sept. 25, 2023) (unpublished). "[S]upportability examines how closely connected a medical opinion is to the objective medical evidence." *Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809, at *3 (10th Cir. Dec. 23, 2022) (unpublished). Stated differently, a supportability inquiry examines how well a medical source supported and explained their own opinion. *S.E.H. v. Kijakazi*, No. 21-CV-01845-CMA, 2022 WL 6730905, at *3 (D. Colo. Oct. 11, 2022) (unpublished) (*citing Vellone v. Saul*, No. 1-20-CV-00261-RAK-HP, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul,* No. 20-CV-261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles v. Saul*, No. 20-CV-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021) (unpublished) (citing 20 C.F.R. §§ 416.920c(c)(2),

404.1520c(c)(2); *Lenoble v. Kijakazi*, No. 22-CV-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) (unpublished) (indicating that "consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion)). When considering a medical opinion, an ALJ must explain his or her approach with respect to the factors of supportability and consistency, but "is not required to expound on the remaining three [factors] unless [he or] she finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical." *T.L. v. Dudek*, No. 24-CV-01747-NRN, 2025 WL 1359213, at *3 (D. Colo. May 9, 2025) (unpublished) (citing 20 C.F.R. § 404.1520c(b)(2)-(3), § 416.920c(b)(2)-(3)).

The depth to which an ALJ must discuss supportability and consistency is not defined by the SSA regulations. *Harp v. Kijakazi*, No. CV 1:21-0275 KRS, 2022 WL 2341740, at *6 (D.N.M. June 29, 2022) (unpublished). "At a minimum, though, the ALJ must provide an explanation that allows the reviewing court to follow [the ALJ's] reasoning and communicates how he [or she] considered the factors of consistency and supportability for each medical source's opinions." *L.C. v. Dudek*, No. 1:23-CV-03448-SBP, 2025 WL 902888, at *6 (D. Colo. Mar. 25, 2025) (unpublished) (quoting *Zambrano v. Kijakazi*, No. CV 1:20-1356 KRS, 2022 WL 1746765, at *5 (D.N.M. May 31, 2022) (unpublished)). Thus, an ALJ's decision has met the articulation requirements when the reviewing court can "trace the path of the adjudicator's reasoning." *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL

15570650, at *5 (10th Cir. 2022) (unpublished) (quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5858 (Jan. 18, 2017)).

Plaintiff asserts that the ALJ's order does not contain an adequate explanation of both the supportability and consistency factors when assessing the persuasiveness of Ms. Wilkins' opinion. ECF No. 11 at 11-16. ECF No. 14 at 1-4. Specifically, she argues that the ALJ failed to evaluate the supportability factor and provided "unsubstantiated conclusions" regarding the consistency factor. *Id.* The Commissioner argues, in response, that the ALJ's discussion in his final order meets the minimal articulation requirements in that it allows this Court, as the subsequent reviewer, to trace the path of the ALJ's reasoning. ECF No. 13 at 8-12.

With regard to consistency, the ALJ's order did not specify that he was assessing the consistency factor, or that Ms. Wilkins' opinion was inconsistent with the record as a whole. However, the final order set out numerous ways in which the medical record did not support Ms. Wilkins' opinion. The ALJ indicated there is "no medical impairment" that would significantly limit Plaintiff's ability to sit, stand or walk, or provide the need for shifting positions, frequent breaks to stand and walk or unscheduled breaks, as assessed by Ms. Wilkins' opinion. ECF No. 10-2 at 37. In addition, the ALJ noted that the limitations assessed for Plaintiff's use of her hands – due to carpal tunnel and cervical degenerative disk disease impairments – "are dramatically overstated in view of the good control of her cervical symptoms with injections and her good response to carpal tunnel surgery." *Id.* Finally, the ALJ

indicated that there is no evidence that Plaintiff's anxiety or physical impairments would cause her to be off task 25% of the workday or that she would be absent from work four days a month. *Id.* These considerations, which compare the evidence in the medical record with the limitations assessed by Ms. Wilkins, goes to the consistency factor for weighing the persuasiveness of her medical opinion against the medical record. As such, although the ALJ did not specifically indicate that he was addressing the consistency factor, his findings reveal that he considered the extent that Ms. Wilkins' opinion as to Plaintiff's abilities and limitations was (or, here, was not) consistent with the record as a whole. *See T.D.F. v. Kijakazi, supra*, 2023 WL 6249035, at *8 (finding no legal error when the ALJ did not describe his consistency analysis in great detail, but spent several pages describing the entire history of treatment records, mental status examinations, and testimony, and ultimately ruled that the experts' "significant findings" were "inconsistent" with Plaintiff's "generally unremarkable" mental evaluations and "inconsistent with the objective evidence of the record.").

However, while the order is sufficient for this Court to follow the ALJ's reasoning as to the consistency factor, in that it compares Ms. Wilkins' opinion to the other medical evidence in the record, the order is devoid of a discussion of the supportability factor or findings related to how persuasive Ms. Wilkins' opinion was based on how she supported and explained her own opinion as to Plaintiff's limitations. I disagree with the Commissioner's argument that the ALJ's statement that the limitations opined by Ms. Wilkins were "not supported" was sufficient on

the basis that she did not provide any objective evidence or findings to support her opinion, and she stated that multiple x-rays and MRIs had been performed, but failed to cite to any specific findings or note how such imaging in any way supported her extreme limitations. ECF No. 13 at 21 (citing ECF No. 10-6 at 1973, ECF No. 10-7 at 479, 845-46, 1985-89). As the reviewing court, my task is to exam the ALJ's explanation of how he considered the factors of consistency and supportability and to follow the path of his reasoning when doing so. Because the ALJ's order here lacks a reviewable articulation of his reliance, if any, on the supportability factor, I remand this case and direct the ALJ to provide a determination of how it impacts the persuasiveness of the medical opinion provided by Ms. Wilkins. *See generally Coronel v. Comm'r of Soc. Sec. Admin.,* No. CIV-21-255-JFH-KEW, 2023 WL 2585660, at *3 (E.D. Okla. Mar. 2, 2023), *report and recommendation adopted,* No. 21-CV-255-JFH-KEW, 2023 WL 2573885 (E.D. Okla. Mar. 20, 2023) (remanding when the ALJ failed to address how any of the evidence used to discount an expert opinion impacted the supportability or consistency of the expert's opinion).

### B. RFC Limitations for Migraines

Plaintiff also claims that the ALJ's assessment of her RFC fails to included limitations to accommodate her migraines; specifically, she contends that no work restrictions for her migraines is not supported by the medical evidence in that the ALJ found that her migraines were "severe" at step two, and the fact that they may have been "well-controlled" by medication evidences only that treatment has improved them (lessened their frequency and severity), not that her migraines have

been resolved and would not affect her ability to work. ECF No. 11 at 16-18. She further asserts that the ALJ's order fails to indicate that the limitation of avoiding machinery and unprotected heights, or of light physical work, accommodates her migraine symptoms. ECF No. 14 at 4-5. *See Murphy v. O'Malley,* No. CV 23-71 MLG/KK, 2024 WL 278089, at *18 (D.N.M. Jan. 25, 2024) (unpublished), *report and recommendation adopted*, No. 1:23-CV-00071-MLG-KK, 2024 WL 5714619 (D.N.M. Feb. 9, 2024) (finding that the ALJ did not adequately explain why she omitted from the RFC any limitations due to the claimant's migraine and headache disorders).

However, the ALJ specifically noted that Plaintiff's migraines were not causing any functional issues greater than those already noted in the RFC as determined by the ALJ. ECF No 10-2 at 38 (indicating "there is no evidence that her migraines, alone or in combination with any of her other impairments, reduced her residual functional capacity below" that provided by the assessed RFC.) As a result, on remand, I direct the ALJ to find and set forth the migraine symptoms that affect Plaintiff's ability to work, if any, as well as the resulting RFC limitations that address as such symptoms if necessary. *Id.* at 2024 WL 278089, at *16 (noting that they ALJ did not "expressly link any of the relied-upon limitations to [the claimant's] headache disorders, as opposed to her other severe physical impairments").

### C. Plaintiff's Subjective Complaints

Finally, Plaintiff claims that the ALJ erred in failing to provide sufficient analysis to support the rejection of her subjective complaints. Specifically, she

asserts that although the ALJ found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," ECF No. 10-2 at 33, the ALJ's "general recitation" of the evidence does not "point to any genuine inconsistencies between Plaintiff's testimony and the record" and "is not sufficient to discount Plaintiff's symptoms after he found that they could reasonably stem from Plaintiff's severe impairments." ECF No. 11 at 19-21. ECF No. 14 at 6.

SSR 16-3p requires the ALJ to consider whether a claimant's statements about the persistence, intensity, and limiting effects of his or her symptoms are inconsistent with the objective medical and other evidence, and notes that such inconsistencies will result in a determination that the symptoms are less likely to reduce capacities to perform work-related activities. SSR 16-3p also provides that the ALJ will explain which of an individual's symptoms the ALJ found consistent or inconsistent with the evidence in his or her record, and how the evaluation of the individual's symptoms led to the ALJ's conclusions.

I agree with the Commissioner that the ALJ's detailed order here set outs the medical evidence, her course of and compliance with treatment, and her daily activities that were inconsistent with Plaintiff's statements regarding the extent of her limitations. ECF No. 10-2 at 33-38. As such, I find no reason for the ALJ to, on remand, make further findings or determinations as to his ruling that Plaintiff's her statements concerning the intensity, persistence and limiting effects of her

symptoms (her subjective complaints), were not entirely consistent with the medical evidence.

ACCORDINGLY, for the foregoing reasons, I REVERSE and REMAND the final decision of the SSA Commissioner denying Plaintiff's application for disability insurance benefits and supplemental security income for further rulings, pursuant to this order, on Plaintiff's claim of an insufficient determination of the medical opinion of Anna Wilkins, R.N., and of the assessed RFC limitations, if any, related to Plaintiff's migraines.

Dated: October 22, 2025 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock

LEWIS T. BABCOCK, JUDGE